The next case this morning is Nelson v. United States, No. 17-1388. Thank you, Your Honor, and may it please the Court, Joshua Salzman on behalf of the United States. The last time this case was before the Court, the Court held that the Academy was entitled to the protection of Colorado's recreational use statutes shielded against liability, and thus that plaintiffs could only prevail by demonstrating a willful or malicious failure to guard or warn against a known dangerous condition likely to cause injury. On remand, the District Court found that demanding standards had been met, but in doing so, it committed two fundamental errors. First, it committed a straight error of statutory interpretation, misconstruing the term willful in a way contrary to the way that Colorado courts would understand that term, and thereby diluting the statute's protection. Well, counsel, you sound pretty certain, but in your brief, you say that the case presents a novel question of statutory interpretation, which sort of suggests to me that maybe in Colorado this isn't a settled matter. Is this something that should have been certified or that still should be certified to the Colorado Supreme Court? I'll take the second half of that first, Your Honor, which is should this be certified. The last time we were here, Judge Tinkovich asked that exact same question, and certainly certification is an option available to the Court. That being said, the last time we were here, the Court ultimately decided that the available tools of statutory construction were sufficient to allow this Court to construe the statute. This Court has previously construed Wyoming's recreational use statute. It's construed Kansas' recreational use statute. So I do think this is something the Court has the ability to decide. That being said, certification is certainly a possibility, as for whether it's novel. Well, we appreciate your confidence, but the previous panel did not interpret this particular clause of the statute. That's true, Your Honor. It interpreted a different clause of the statute that, like this one, had not previously been addressed by Colorado courts. And, indeed, there's essentially no Colorado authority from within the Colorado State court system construing the recreational use statute, which is on some level, I think, a testament to the fact that it really does provide very robust protections. As for why this case can be both novel and, I think, something where the Court can confidently decide that there's an error of statutory construction made here, I think there's three things the Court can look to that will inform its assessment. And one is the statutory text and structure itself. And there are a couple of features of that I want to highlight. One is the fact that this isn't just a willfulness standard. It's a willful failure to guard or warn against a known dangerous condition likely to cause harm. So I think if the willfulness standard is construed in too watered-down of a way, it becomes redundant of the statute's other requirements. Are you fine with saying that there was a willful failure to guard or warn against right up to there, and then you — No, I wouldn't, Your Honor, because I think willful here doesn't just mean was it an intentional failure. I think willful needs to be understood as addressing the necessary mens rea. And if you look to what willful negligence means under Colorado law in cases like United Blood and in cases like Crumb v. Gross, what we see is that the actor needs to have been — realized that his conduct was dangerous. And there was no evidence of that here. And indeed, lots of other States in construing their own recreational use statutes likewise impose a requirement that the tortfeasor must have recognized or realized the risk of injury. So it's a subjective test. If a different natural resource officer had thought, ooh, that looks dangerous, I need to notify someone, and then forgot to do it, then you would concede liability? I think this is going to be a fact-dependent situation. But here what you have is a factual finding by the district court at JA-413 that the only Academy employee who was aware of the sinkhole, Dr. Mel Bockler, genuinely believed that there was no ongoing recreational use of the path. And as a result, the thought never occurred to him that anyone would be injured. But we also have evidence that other people that were employees or agents of your client knew that this path was used by the public. And the — why can't we look collectively at the knowledge of the institutional defendant? We do it all the time in these types of cases. You absolutely can impute knowledge under certain circumstances. And the relevant question here is, how would Colorado cases — how would Colorado courts address collective knowledge in this context? But I think it's important to understand that just because knowledge can be imputed to a corporation or here to a governmental entity doesn't mean that you can impute intent. I think there's a difference between saying the government is chargeable with knowledge of ongoing use of the path because of some other folks, and its knowledge — its imputed with knowledge of the sinkhole through Dr. Mel Bockler, but that it doesn't follow that there was conscious awareness. I'm sorry, Your Honor. They had noticed that there was a sign that said, bike path. And they didn't have it taken down. And they also now have knowledge that there's a gaping sinkhole in the middle of the designated bike path. I mean, isn't that — if you do nothing at that point, isn't that a willful failure to guard against a like — a condition likely to cause harm? No, Your Honor. I — with regards to the bike path sign, I think it's worth noting the Academy had received notice of the bike path sign, as this Court recognized in its prior opinion. But the district court's fact-finding on that was that the Academy ignored it and it fell off the radar. But the radar of the person — but more fundamentally, the mere existence of the bike path sign doesn't impose on the Academy any duty to monitor the path. In fact, the very essence of the Recreational Use Statute is to free landowners to open up their property by freeing them from — But they were not — — uptake responsibilities. They didn't — even if they didn't have a duty to monitor the path, they sent someone out who did monitor the path, saw a gaping hole in it, and did zero. So they sent somebody out to monitor the path — or, rather, they sent somebody out to survey erosion issues in the area of the path, primarily to figure out its impact on a species of jumping mouse. Then that person — there was a factual finding by the district court that that person was unaware of the existence of the sign and believed — genuinely believed that there was no ongoing use of the path. So I'd actually — let's turn to the one Colorado case that was actually discussed by the district court. I want to hear what you say about the Colorado case, but before we leave what you just said, I want to ask you a general question and then a particular one. Your brief doesn't seem to take issue with any of the district court's factual findings. Is that a correct reading of your brief? We're not trying to challenge the district court's factual findings. There's one respect in which I think it's important to highlight a pretty fundamental defect in the court's fact findings, and that's with regards to the court's adverse credibility finding with respect to one small portion of Dr. Milbockler's opinion, which relates to his genuine belief that easement holders were responsible for the upkeep of the path. In its original decision after trial, the district court expressly, at JA-169 and JA-170, credited Milbockler's testimony and relied on it as a basis for dismissing a discretionary defunction defense. Then on remand, the district court purported to incorporate its prior decision in its entirety, never acknowledged that factual finding, and then made a limited adverse credibility finding. All right. Apart from the easement holders, then, you agree with all the factual findings of the district court? I think we are not challenging factual findings. In fact, I think many of the factual findings are. You're not challenging them. Maybe I should have said it that way instead of agree. I'm sorry. Yeah. Now back to Dr. Milbockler. So he sees the sinkhole that covers the whole path, and isn't he also aware of the Air Force Academy standards for these pathways? Yeah. So what the district court found, and this is in the findings of fact, is he was aware of the responsibility with regards to trails, what were designated trails. But the district court also found that Dr. Milbockler knew this wasn't a designated trail and found as a matter of fact that Dr. Milbockler genuinely believed there was no ongoing use of the path, and as a result, the trail upkeep requirements were not applicable here. But there was evidence that Dr. Milbockler knew that the path had been used. Didn't he testify that there were six occasions where he saw people using the path? Yeah. So if you see go to JA-414, what you'll see is the district court crediting Dr. Milbockler's testimony that he had seen people on the path on a handful of occasions years earlier, but the intervening construction of a new road called Struthers Road led him to believe that any traffic that had once been on the path had moved off of it. Well, I — looking at the statute, it's the words known, dangerous, and dangerous condition. And are you — is it your argument that Dr. Milbockler didn't know the condition was dangerous? Forget about the use of the path for a second. Did he know or did he not know that the condition was dangerous? I think what this comes back to ultimately is the word willful. I think that's the right place to focus. Well, I want to focus on known. What did he know? He knew there was a sinkhole in the path. He did not know there was ongoing use of the path. And as a result, he didn't think the public was being put in jeopardy. But that was an uneducated view. It's not like he was out there all the time trying to notice or something. And you do have an asphalt path. This is not something where a few cows had roamed through the weeds. Isn't it reasonable to assume if you have an asphalt path that someone might be using the path? Well, two things with regard to that, Your Honor. One is he did think somebody was using the path. He thought it was being used by vehicles operated by the two easement holes. Did he tell them? He didn't, Your Honor. And all of this is to say maybe this adds up to negligence. Maybe we might wish that Dr. Milbockler did more. But I think that's why this all comes back to the statutory construction question. Okay. The district court — I'm back there, counsel. Okay. When — does the word known — is it actual knowledge or is it know or should have known? I think in this statute, it's quite clear that it's intended to be actual knowledge. Well, it doesn't — it just says known. So how is it quite clear? Because in other formulations, you will see the use of the should have known. Wait, wait, wait, wait. Oh, sorry, Your Honor. What other formulations? I — you will sometimes see in Colorado statutes, use of the phrase should have known. Well, I've looked at some other formulations from other states. Yeah. And some of them say actual knowledge. Some of them say known or should have known. And then here we have known, which doesn't say either way. So I'm not sure how clear that really is. I think if you look at the words in tandem, that it's willful — a willful, failure to guard or warn, a known dangerous condition likely to go harm — cause harm, that goes beyond what some other states have done. California, for example, has a recreational use statute whose precedents the district court applied repeatedly here. That statute doesn't say a known dangerous condition. It just says a willful failure to guard or warn. Going back to — I — we have strayed from it a bit, but on the — on the collective knowledge issue, I think it's quite important to look to the Jacobs case, which is the only case from Colorado that was discussed in the briefing below or in the — You know, and both sides love that case, and I've read it and read it. I don't think it advances either side of this argument. It doesn't say yes, and it doesn't say no. In that case, one employee was aware of all the prior accidents. So it — I mean, I find it very unhelpful. So maybe you can tell me why it's helpful. So I don't think it's dispositive, Your Honor. And as I said, because this is an FTCA case, we have to try to figure out what Colorado courts would do. I think it's notable that on page 13 of the Jacobs case, the court says — at the beginning, the court stresses that the district manager was aware. And then at page 13, the court repeats that the exemplary damages are being sought there specifically based on the knowledge of — or is predicated on the fact that this one employee had all the requisite knowledge. Is that a crystal ball? Is that — does that definitively answer this question? No. But to the extent that we're trying to discern what Colorado courts would do here, especially in the context of a statute designed to protect landowners, designed to induce landowners to open up their property so that no more — there won't be no trespassing signs put up, so that there won't be fences hung up, so that the public can get recreational — Jaylee V. Brown. It's a case from the Colorado Court of Appeals. I'm afraid I haven't, Your Honor. Well, then I don't want to use up more of your time. Go ahead. Well, I was just going to point out that Colorado has recognized collective knowledge, certainly in the insurance context. And it relies on the restatement of agency. And if you look at the restatement of agency, it very clearly allows for imputation of collective knowledge to corporations and entities. Why would we assume that Colorado wouldn't do that here? Oh, I — again, I want to be clear about keeping separate the idea of imputing knowledge and imputing intent. So in Jacobs itself, for example, the Court did look to the collective knowledge when it was discussing simple negligence. But when you need what the district court said was a conscious disregard or what should have been required was conscious awareness of the danger of the public, that implies a person who is conscious of this. And therefore, because of the heightened intent standard, that's why collective knowledge can't get there. Why couldn't the plaintiffs get there by taking what Dr. Milbockler knew and combining that with what this Court said in 2016? And I'm quoting, the Academy personnel knew for many years that the public used the path for recreational purposes. If you put that together with Dr. Milbockler, why isn't the Air Force Academy on notice that they've got a dangerous situation? Again, that's just another way of saying — I'm agreeing with the Court that you can assume under normal rules of imputation of knowledge that the Academy was aware of use of the path and was aware of the sinkhole through Dr. Milbockler. That gets you to simple negligence. What that doesn't get you is conscious awareness that the public is being put in jeopardy. For that, you need somebody — you need a person who recognized and knew both facts and therefore could appreciate their implications. And your best case for that is this Jacobson case? No. I think my best case for that is, first of all, the statement in United Blood, for example, that willfulness requires an actor to have realized that the public was being put in danger, realized the danger. Here, there's nobody who is realizing the danger. If Dr. Milbockler's testimony instead was, yes, I saw two or three bicyclists a day go on that path, then you wouldn't be making this argument, right? That would be a much harder case, Your Honor. Well, would you have a case? I mean, bicyclists and gaping holes and paths? I mean, the key thing here is the factual finding. But I don't want you to drift off on me. I want you to stick on that, which is, if he had said that, yes, I see bicyclists routinely, but I don't care. It's not my problem or whatever he said, then you would concede the liability or no? Yeah, I think we would. Okay. Now, you didn't really answer Judge Matheson's question because he read a part of the district court's earlier finding about the academy knew that there were people on this pathway and asked you to combine that. And it sounds to me like if you combine it based on the answer you just gave to me, that you lose. I don't think so, Your Honor, because you can know two things without appreciating their implications together. If you look at what this Court said about Utah's recreational statute in the Everett case, if you look at what the new — the Utah Supreme Court said about its own recreational use statute in Golding, what you need is not just knowledge of the dangerous condition, and you need some realization on the part of the landowner that the public is being put in jeopardy. And imputation doesn't get you the level of conscious awareness. It doesn't get you to the realization. Thank you, Your Honor. Thank you, counsel. May it please the Court. Counsel Robert Fishman on behalf of James Nelson and Elizabeth Varney. I want to make a couple comments about the factual discussions the Court just had with my colleague. And then I want to circle back to the threshold question, what does willful mean under Colorado law, because I think I will be able to help the Court have some confidence that that is a question you can resolve without having to resort to the Colorado Supreme Court to answer it. On some of these factual questions, Mr. Salzman said that there is one fact-finding in the District Court's 2017 order that they are challenging on appeal, and that is that he is responsible for taking care of the easement. He says that's a minor credibility point. That is a cornerstone of his case, good faith. Milbacher didn't do anything because he was acting in good faith. And I'm going to get back to that in a second. The first point I want to make is having conceded that they're not challenging any other factual findings in this case, I will point the Court to page 48 of the 2017 order, and that, I apologize, is a page number to the actual order, not the joint appendix. Page 48, paragraph 74, where the District Court found that Dr. Milbacher was on notice that the public used the path. Why? Because he had seen it with his own eyes in the past, and nothing had happened since then that would lead him to conclude that the public had been precluded from using it. You have a new road, though. That was his explanation. Well, sure, that's his rationale, but some excuse as to why maybe the public wouldn't be using it is not the same as saying they're precluded from using it, particularly when you have the sign, you have all the other people in the agency who are aware of this. And so the admission, even if there's some contrary evidence that could have led to a different fact-finding, Judge Phillips, the fact is the Court here found he was on notice of public use. They have not challenged that. It seems to me that's game over as far as the facts are concerned. Well, why is it game over if the District Court also found that Dr. Milbacher did not consider the condition of the path to be dangerous to the public? So there's a couple responses to that. The first is the government has not challenged on appeal, Judge Matheson, the elements that you were questioning about. A known dangerous condition likely to cause injury. The District Court found those elements based really not on what was going on in Milbacher's head, but based on the admissions of other Air Force personnel who said, yeah, this was a dangerous emergency situation. But doesn't that get us to this whole question of collective knowledge? Well, it could. And it also gets us to the question of willfulness. And I can address collective knowledge in two ways. I agree with you, Judge McHugh. I think Jacobs does not tell us a lot about what the Colorado Supreme Court might do with this. The government is wrong in saying that Jacobs found negligence based on collective knowledge. That is not an issue in the case. What the court in Jacobs did was said, you can look at past incidents as evidence of the existence of a hazard. It's not at all what the government attributes to Jacobs. So the question on collective knowledge, in my mind, is has the government given this court any reason to reject the eight or nine cases cited by the District Court in support of the precise conclusion that the United States government can be held liable for willful failure to warn or guard under a recreational use statute by looking at the knowledge of its various employers? Well, in your brief, you were up to about the District Court cited 20 cases. He cites 20 cases for his analysis. Well, all right. On the collective knowledge, though, give us your best case or two. Well, I think it's the eight or nine cases showed over here. How about the best one or two? I don't, I think. Then just give us one. I think they're all on par. They're the cases discussed at 26 through 27, where the court says you're looking at multiple defendants. You're looking at multiple employees to conclude what the institution knew as a whole. Okay. But I think the point Mr. Salzman was making, I don't want to put words in his mouth, but I'll just make it a question. Doesn't it matter whether this issue is considered in the context of a negligence claim on one hand, as opposed to the context of a willful claim? Here we're talking about the exception to the Colorado Recreational Use Act. Negligence is now off the table. We've moved on to this exception. And do you have a case where collective knowledge was recognized when an element of the claim is willful disregard in the face of unknown danger? I mean, if there's a Colorado case, that'd be very helpful. If it's on point, in terms of what I just said. I don't have a Colorado case. But one of those eight cases would be one, right? They are not Colorado cases. Well, I'm not. I'm looking for any case. Right. Well, those are all cases that involve willfulness under a recreational use statute. And they look to the collective knowledge of the United States government's employees. And you don't have one for Colorado? That's correct. Okay. And I will add, however, that the distinction that Mr. Salzman has drawn, collective knowledge, in general, might go to negligence, but not willfulness. That's, I mean, could be. He doesn't cite a single case that supports that proposition. Well, it could be. I mean, isn't that what this case turns on? Well, as the appellee, I'm here to defend a judgment in the wake of the government trying to carry its burden of proving that there was an error. And when Mr. Salzman draws a distinction and offers no argument and no authority that supports it, I think the government has failed in its burden. Can I ask you a couple of questions on how you construe the statute? Would you still contend that there was liability if Dr. Milbacher had never seen a bicyclist, a pedestrian, or anything else on that pathway? Yes. And the reason is, and this goes kind of to the start of the case, and what does willful mean under Colorado law? In this case, it's clear that willfulness applies to conduct, the failure to guard or warn. It does not go like in the Crum case to a result, or in People v. Marcy to a result, causing the death of another, damaging property. It is willfulness as to conduct. And in that context, under Colorado law, the requirement is that you're consciously aware of what it is that you are doing. And Milbacher is consciously aware. He sees the sinkhole and he says, I'm not going to do anything about it because I have bigger priorities. Well, and that would be fine if nobody used that path, wouldn't it? Because how can you likely have harm if nobody's using the path? Well, because if you look at willfulness as applied only to conduct, then you get to the third and fourth elements, which is a known dangerous condition likely to cause harm, which was conceded by the Air Force. Those elements have not been challenged on appeal. And that's why the case, I think, ends up getting a little convoluted. Where did they say that the Air Force, where did they concede that they knew it was a dangerous condition? Well, it's a known date. Well, Milbacher sees it. But he also, district court found that Milbacher didn't think it was a dangerous condition. Well, no, I think that is all just a sort of blatant misconstruction of the district court's order. It is true that there is a title to the order that says findings of fact, where the court recounts all the testimony at trial. And he doesn't try to square any of the inconsistencies. He doesn't make any findings about credibility in that section. So you're saying he just is reciting testimony? Well, yeah. And I think the reason that's clear is he recites, for example, all of Milbacher's testimonies about why he thinks somebody else is responsible. So, yes, yes, that's what you're saying. Counsel, let me just, this is number 63, paragraph 63. As he did not think the path was being used by pedestrians or bikers, the thought never occurred to Dr. Milbacher that the damage to the path would create a safety hazard. He did not think that the hole was likely to cause anyone harm. What are we supposed to do with that? Okay. Here's what you're supposed to do with it. It is recounting Dr. Milbacher's testimony. Because in the court's conclusions of law, he says, Milbacher's got an innocent explanation. I really don't buy it. The reason he did nothing is because he had higher priorities. So I think just structurally, I think it's an unfair reading of the district court's order. But wait, wait, wait. I just, I just read the paragraph. I understand. Was that an unfair reading? I think it's unfair to say that the court is accepting that testimony as truthful and not contradicted by any other evidence. Well, then how do you get knowledge of danger attributed to the academy? It doesn't seem like you can get there through Dr. Milbacher. So how are you going to get there? Well, I think you can get there through Dr. Milbacher because the court says, I find that you were on notice of public use. I think you'd get there that way. I think you can get there through collective knowledge. I think you can get there through the fact that the government has conceded it's a known dangerous condition. I got to stop you there. Give me the record site where the government conceded that. It is because I haven't seen it. I'm going to look for it. Because that's a big concession. The court itself recites it in its order and I'm going to. Well, I haven't found it. You're going to have to find it. I'm going to try to do that while I continue. Well, you may have to follow up. So I don't want to take up your time. I haven't seen that. And that's an important point. I'll take you up on the invitation. I will follow up with a letter today pointing this out. Does it matter what Dr. Milbacher believed? Obviously, it matters a great deal what he saw. Does it matter what he believed? It does not. And I want to talk statutory construction. I don't want a speech on that. I want to tie it to the statute. That's where I'm going. That's where I'm going. Crum and Macy, as I alluded to before, deal with the definition of willfulness as to results. Macy has a definition in the statute of willfulness. So I don't know we can take anything from Macy. Here's why I think Marcy is important. It's because it says on page 78, under Colorado law, granted they're talking about the criminal law, there is a distinction between the meaning of willfulness as applied to conduct and willfulness applied to results. So Marcy tells you why Crum is distinguishable. Judge Phillips, to your question, you have three cases cited by the United States in support of their contention that you need to consciously expose the public to a substantial risk of injury in order to act willfully. And they are Tri-Aspen Construction, their United Blood Services, and their Safe House Alliance. Safe House Alliance and United Blood Services rely strictly on Tri-Aspen Construction for their definition of the word willful. But I'm trying to direct you to the words of the statute, not cases that don't have the same language. And here's my question as precisely as I can state it to you, which is we have this a known dangerous condition. Obviously, someone had to know about the condition. Is the question of danger and the question of likelihood of harm, is that a question for the court to decide based on all of the evidence? Or does Dr. Milbacher's beliefs enter into that? I think you look at, I think it's the former. You look at the condition that is known and you determine whether it was dangerous and likely to cause harm. And the Air Force conceded that. So you know of the condition. It is of the nature described in the statute. And then all that is required is that there is no warning or remedial actions taken purposefully, willfully. That is how the statute works. It has four requirements for liability. Three of them are not contested in this case. The only issue presented by the government on appeal is willfulness. And I have to go back because I know the court is struggling, I think, with what willfulness should mean under Colorado law as it's used in this statute. And I have to go back to Tri-Aspen construction and explain something that was at best cryptic in our response brief. Tri-Aspen said, it's interpreting the punitive damages statute under Colorado law that had been in effect since 1889. It referred to wanton and reckless behavior. The Supreme Court said that's a really high standard. It's intent to injure. It's almost the standard proposed by the government. Substantial likelihood of harm that you know of. That case was decided in February of 1986. Before the year was out, the Colorado General Assembly scrapped that statute from 1889 and enacted the current exemplary punitive damages statute, which refers to willful and wanton conduct. It contains a definition. And the Colorado Supreme Court in Coors v. Security Life and many other cases has consistently said under the current punitive damages statute, under the current meaning of willful and wanton, it is consciously aware of your conduct that you knew or should have known was likely to cause injury. That is an objective standard. It is fundamentally inconsistent with the subjective standard being proposed by the government based on a case interpreting a law that has been repealed. You've got a little extra time because we gave counsel. Let me just try to frame it this way. For the plaintiffs to prevail, did you need to show that these four elements of the willful provision were satisfied through Dr. Millbuckler? I don't think so. I think willfulness as to the will. What we had to show is that somebody willfully failed to guard or warn. And that somebody is Millbuckler who looks at the sinkhole and says, I have other priorities. Well, now wait a minute. I said, do you have to do it through Millbuckler? And now you just said that somebody is Millbuckler. Only as to the failure to warn. The existence of the condition and its quality as one likely to cause injury, I don't think Millbuckler needs to appreciate that. Okay. Just to recap, because I've been trying to listen carefully, it seems almost like you're making two arguments. One is that you could get there just through Millbuckler, but you don't have to get there just through Millbuckler. Is that correct? Well, that is correct. And to that point, not just as a legal matter, but as a factual matter. Because after all, the district court, after it went through its collective knowledge analysis, said, and even if I disregard collective knowledge, Millbuckler himself had all the knowledge that's necessary to hold the Air Force accountable. Okay. So let me just, let's say, just for the sake of discussion, that Colorado does not allow for proof of this exception through collective knowledge. That if you're going to get there, it's only through Millbuckler. But you think you can get there through him? Absolutely. Because he observes the sinkhole. According to the district court's finding, he is on notice that the public is using the property, and he does nothing about it. And under Coors v. Security Life of Denver, if you knew or should have known it was likely to result in injury, then you're liable. And should have known is another fact finding that the district court made that the government is not contesting. All right. I think we've kind of hit the equal point. Any other questions? Counsel, we appreciate your arguments. And in fact, we appreciate both of your arguments. The case will be submitted, and counsel are excused.